IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA ERWOOD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 14-1284 |
| | ) | |
| | ) | Judge Nora Barry Fischer/ |
| LIFE INSURANCE COMPANY OF | ) | Chief Magistrate Judge Maureen P. Kelly |
| NORTH AMERICA; WELLSTAR | ) | |
| HEALTH SYSTEM, INC.; GROUP LIFE | ) | Re: ECF No. 39 |
| INSURANCE PROGRAM, | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

Pending before the Court is the "Motion to Dismiss Count I of Plaintiff's Amended Complaint," ECF No. 39, filed on behalf of Defendant Life Insurance Company of North America ("LINA"). For the following reasons, it is respectfully recommended that the Motion to Dismiss be denied.

**II.   REPORT**

   **A.   FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of the instant Motion to Dismiss, the factual allegations in the Amended Complaint, ECF No. 34, are accepted as true and all reasonable inferences are drawn in Plaintiff's favor. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Plaintiff Patricia Erwood brings this action to recover life insurance benefits under a benefit plan ("the Plan") established by WellStar Health Systems, Inc. ("WellStar") on behalf of its employees, including Plaintiff's deceased husband, Dr. Scott Erwood. The Plan is funded by

1

a group life insurance policy purchased by WellStar from Defendant Life Insurance Company of North America ("LINA"), as part of an employee benefit plan established pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

LINA insures the Plan and handles all claims administration on behalf of the Plan. In its Answer to the Amended Complaint, ECF No. 41, Defendant WellStar confirms it is the Plan Administrator and states that LINA is the named fiduciary for adjudicating claims. (ECF No. 41, ¶ 8). LINA's role as a fiduciary "for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims" is also set forth in the applicable policies. (ECF No. 39-2, LINA-TR-000034, LINA-TR-000058).

In the course of his employment as a brain surgeon with WellStar, Dr. Erwood was offered the opportunity to purchase Basic and Supplemental Group Life Insurance. Dr. Erwood purchased coverage under both policies in April 2011, naming his wife, Patricia Erwood, as a beneficiary. Tragically, in November 2011, Dr. Erwood was diagnosed with a malignant brain tumor and as of November 16, 2011, was no longer able to work.

Dr. Erwood availed himself of a Family and Medical Leave Act ("FMLA") leave of absence for a Serious Health Condition beginning January 31, 2012. The terms of WellStar's FMLA program provided Dr. Erwood with 36 weeks of leave, which ended on September 4, 2012. While on leave, he was required to pay only the payroll deduction rate to continue insurance coverage under the Plan, including his Basic and Supplemental life insurance. Premiums were due on a schedule coinciding with pay periods, and were payable to WellStar.

In August 2012, Dr. Erwood submitted a claim for the Terminal Illness Benefit provided by the Plan policies. LINA approved the claim on or about September 5, 2012, paying him

$250,000. In the letter approving his Terminal Illness claim, LINA also represented to Dr. Erwood that he retained $750,000 in available life insurance under the Plan.

Dr. Erwood continued to pay semi-monthly premiums for life insurance through the date of his death on June 26, 2013. Premiums were remitted by WellStar to LINA, which retained the proceeds. Following Dr. Erwood's death, Plaintiff filed a claim with WellStar for the remaining insurance proceeds available under the Basic and Supplemental life insurance policies. WellStar completed its portion of the claim form and submitted the claim to LINA, representing that $500,000 in coverage remained under the Basic policy and $250,000 remained under the Supplemental policy.

On October 11, 2013, LINA denied Plaintiff's claim, stating that the benefit was not payable because the policy had lapsed as of July 25, 2012, which was the date LINA represented Dr. Erwood's 36 week FMLA leave expired. Plaintiff alleges that following the denial of her claim, Plaintiff requested information from WellStar regarding its process for notifying employees of their rights to convert the group insurance to an individual policy at termination of employment. Plaintiff also requested copies of any forms provided to Dr. Erwood concerning his conversion rights. WellStar has denied an obligation to provide conversion forms or to facilitate the conversion of the policies for its employees and former employees, and so denied Plaintiff's request.

Plaintiff filed an initial administrative appeal, challenging LINA's determination that no coverage was owed. Plaintiff contended that LINA's conduct was inconsistent with its representations regarding coverage. First, Plaintiff pointed to LINA's payment of Dr. Erwood's Terminal Illness claim on September 5, 2012, as inconsistent with its later contention that coverage lapsed on July 25, 2012. In addition, Plaintiff pointed to LINA's statement in the

3

September 5, 2012, award letter that coverage remained in place with regard to death benefits owed under both policies. Plaintiff also contended that LINA's continued acceptance of premiums for life insurance through June 2013 is inconsistent with its denial of Plaintiff's death benefit claim. Finally, Plaintiff argued that in correspondence dated May 22, 2014, LINA revised the lapse date, stating that coverage under the Plan policies ceased on October 5, 2012, one month and one day after the end of Dr. Erwood's 36 week FMLA leave. Plaintiff believes this change in date would have rendered payment of Terminal Death benefit inappropriate if LINA's interpretation was accurate and so also inconsistent with the payment remitted.

In bringing this action, Plaintiff raises each of these inconsistencies in LINA's treatment of Dr. Erwood's coverage. Accordingly, as to LINA, Plaintiff's two count Amended Complaint seeks recovery of benefits allegedly due under the policy pursuant to 29 U.S.C. § 1132(a)(1)(B), as well as attorney's fees and costs, contending that LINA: (1) failed in its obligations to not accept premiums for coverage for which he was not eligible; (2) failed to properly advise Dr. Erwood of his rights under the Plan; (3) misrepresented the existence of coverage in the September 5, 2012 letter; and, (4) mishandled the conversion process by failing to advise Dr. Erwood of his rights to convert the policy so that coverage would remain in place until his death. Plaintiff contends that LINA has breach its fiduciary duties to Dr. Erwood and his beneficiaries, and has otherwise been unjustly enriched by accepting and enjoying the benefits of the life insurance premiums paid by Dr. Erwood and yet failing to provide the coverage for which the premiums were paid.

In response to the Amended Complaint, LINA states that after Dr. Erwood stopped working for WellStar, he failed to convert his group policies to individual policies. Therefore, pursuant to the terms of the policies, Dr. Erwood's coverage lapsed 31 days after the termination

of his FMLA leave. To the extent Plaintiff alleges that Dr. Erwood was not advised of the necessity to convert the policies, LINA contends that the policies make clear it had no legal or contractual duty to do so. Rather, as provided by the policies, the obligation to notify the insured of his conversion right rested with Defendants Group Life Insurance Program (referred to by the parties as "Defendant Life Plan") and WellStar, as Plan Administrator. Finally, LINA contends that error, if any, in accepting premium payments, was on the part of Defendant Life Plan, which submitted the payments to LINA.

Under the terms of the policies at issue, LINA asserts it bears no liability to the insured for errors committed by its employer or the Defendant Life Plan which acted as his agent. For support for its arguments against coverage, LINA cites the following policy provisions:

- Those eligible for coverage are "active, Full-time Employees of the Employer regularly working a minimum of 64 hours per pay period (every two weeks)...." (ECF No. 39-2 at LINA-TR-000010; LINA-TR-000040).

- Coverage under the policies may be continued for employees who take a family medical leave of absence due to a personal illness for up to "36 weeks after the exhaustion of Extended Illness Benefits." (ECF No. 39-2 at LINA-TR-000014; LINA-TR-000043).

- If coverage would otherwise end due to "termination of membership in an eligible class," the insured "may convert all or any portion of his or her Life Insurance that would end." (ECF No. 39-2 at LINA-TR-000023; LINA-TR-000049).

- "To apply for conversion insurance, the Insured must, within 31 days after coverage under the policy ends: (1) submit an application to the Insurance Company; and (2) pay the required premium." (ECF No. 39-2 at LINA-TR-000023; LINA-TR-000049).

- "If an Insured is eligible for conversion insurance and is not notified of this right at least 15 days prior to the end of the 31-day conversion period, the conversion period will be extended ....Notice, for the purpose of this section, means written notice presented to the Insured by the Employer or mailed to the Insured's last known address as reported by the Employer." (ECF No. 39-2 at LINA-TR-000024; LINA-TR-000050).

- "The Employer and Plan Administrator are agents of the Employee for

5

> transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions." (ECF No. 39-2 at LINA-TR-000030; LINA-TR-000055).
>
> - "No agent may change the Policy or waive any of its provisions." (ECF No. 39-2 at LINA-TR-000030; LINA-TR-000055).

(ECF No. 40, p. 3).

LINA contends that given the language of the policy, Plaintiff may not recover, regardless of its retention of premiums for nearly a year or its statement that coverage continued in place after September 5, 2012.

### B. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises out of the denial of insurance benefits under a Plan subject to ERISA, 29 U.S.C. § 1001, et seq.

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its

face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 513 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

In considering a motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.2002). However, the Court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Accordingly, for purposes of the pending Motion to Dismiss, the Court considers the policies placed at issue by Plaintiff's Amended Complaint, which are not disputed.

7

C.   **DISCUSSION**

According to ERISA § 502(a)(1)(B): "[a] civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004). Furthermore, § 1132(a)(3)(B) allows a participant beneficiary to "obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." See, Campbell v. CIGNA Grp. Ins., No. 2:12-CV-00443, 2012 WL 2403396, at *4 (W.D. Pa. June 26, 2012).

Resolution of LINA's Motion to Dismiss and Plaintiff's claims of liability against it rests upon a determination of whether, under the facts alleged, LINA's conduct constitutes estoppel or waiver of the policy provisions that require an application to convert a group policy to an individual policy. This question appears to have been resolved in favor of an ERISA plan insurer by the United States Court of Appeal for the Third Circuit in Bicknell v. Lockheed Martin Group Benefits, 410 F. App'x 570 (3d Cir. 2011). However, Bicknell was decided on a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, after discovery.

In Bicknell, the plaintiff participated in an employer-sponsored plan provided pursuant to ERISA. As a participant, the plaintiff had the option of purchasing life insurance for his children, so long as they qualified as dependents. The Summary Plan Description defined eligible dependents to include children, up to the age of 25 "who are unmarried; registered full-time students; and who depend upon you primarily for support." Id. at 572. Coverage under the

policy ended when a dependent no longer qualified under the plan definition, but a right to convert the group policy to an individual policy was provided. Conversion was predicated upon an application and payment of the first premium within 31 days after a dependent becomes ineligible.

The evidence in Bicknell established that the plaintiff enrolled his son at a time when he was not eligible, and paid premiums until his son's death. The plaintiff testified that he was told by his employer that enrollment through the computer system confirmed his son's eligibility. This turned out to be in error, and the evidence showed that the online process included a statement upon activation of the system that "[c]laims will only be paid for dependents you have enrolled who meet the eligibility requirements for those plans. You are responsible for maintaining accurate information on the eligible dependents you want to cover." Id. at 573. The Court of Appeals found that neither estoppel predicated upon the enrollment process nor waiver predicated upon the acceptance of premiums could extend coverage. In particular, the Court of Appeals noted that the enrollment process for coverage clearly placed plaintiff on notice of the conditions for dependent coverage and that the appropriate policy information and documentation was available to the plaintiff on his employer's internal computer network. Id. at 573, 575.

Here, given the early procedural posture of the case, there is no evidence as to the information available to Dr. Erwood regarding the need to convert the policy to an individual policy nor evidence regarding notice received as to the timing within which such a conversion must occur. Further, given the allegations regarding LINA's representations in correspondence to Dr. Erwood on September 5, 2012, stating that death benefit coverage remained in place, it cannot be said as a matter of law that Plaintiff has not presented an implausible claim for waiver

9

estoppel, or breach of LINA's fiduciary obligations with respect to handling Dr. Erwood's initial claim for Terminal Death Benefits in the absence of notice of the policy conditions.

Under similar procedural circumstances, this Court denied a Motion to Dismiss, finding that resort to policy language was inappropriate. See, Campbell v. CIGNA Group Ins., No. 12-CV-00443, 2012 WL 2403396 (June 26, 2012). Judge Schwab summarized a fiduciary's obligations under ERISA as follows:

> Under Section 404 of ERISA "[a] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ... for the exclusive purpose of (i) providing benefits to participants and their beneficiaries." 29 U.S.C.A. § 1104. Although Defendant is correct that plan participants have a duty to inform themselves of the details in their plans, "[p]ursuant to this provision, we have determined that a 'fiduciary may not, in the performance of [its] duties, 'materially mislead those to whom the duties of loyalty and prudence are owed.'" Shook v. Avaya Inc., 625 F.3d 69, 73 (3d Cir. 2010) (citing In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009)). In this context, a plan administrator can potentially breach its fiduciary duty by failing "to adequately inform plan participants and beneficiaries" as Plaintiff alleges in her Amended Complaint. Id.

Campbell v. CIGNA Grp. Ins., 2012 WL 2403396, at *4. The Court went on to distinguish Bicknell, supra, given the procedural posture of the case, and determined that the plaintiff had met her burden under the less stringent standard for a Motion to Dismiss by pleading facts which are "sufficient to show a plausible claims for relief," Id., citing Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Here, this Court should not dismiss a complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Based upon the allegations contained in the Amended Complaint, it appears that Plaintiff has set forth sufficient facts to make a plausible claim for recovery of the death benefits afforded under the policies at issue. Accordingly, it is recommended that the Motion to Dismiss be denied.

## D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the "Motion to Dismiss Count I of Plaintiff's Amended Complaint," ECF No. 39, filed on behalf of Defendant Life Insurance Company of North America be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: April 1, 2015

cc: All Counsel of Record via CM-ECF