IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA ERWOOD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 14-1284 |
| | ) | |
| LIFE INSURANCE COMPANY OF | ) | Chief Magistrate Judge Maureen P. Kelly |
| NORTH AMERICA; WELLSTAR | ) | |
| HEALTH SYSTEM, INC.; GROUP LIFE | ) | |
| INSURANCE PROGRAM, | ) | Re:  ECF Nos. 87, 92 and 98 |
| Defendants. | ) | |

## OPINION

Presently before the Court are three Motions for Summary Judgment: one filed by Defendant Life Insurance Company of North America ("LINA"), ECF No. 87; one filed by Defendants Group Life Insurance Program ("the Plan") and WellStar Health System, Inc. ("WellStar")(collectively, "the WellStar Defendants"), ECF No. 92; and a Cross Motion for Partial Summary Judgment filed by Plaintiff Patricia Erwood, ECF No 98.  For the following reasons, LINA's Motion for Summary Judgment, ECF No. 87, will be granted in part and denied in part; the WellStar Defendants' Motion for Summary Judgment, ECF No. 92, will be granted in part and denied in part; and Plaintiff's Cross Motion for Partial Summary Judgment, ECF No. 98, will be denied.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed the operative Complaint, ECF No. 34, on November 19, 2014, seeking to recover life insurance benefits from a policy purchased by her now-deceased husband, Dr. Scott Erwood, ("Dr. Erwood") as part of an employee benefit plan ("the Plan") established pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.  LINA filed

its Answer on May 15, 2105.  ECF No. 57.  The WellStar Defendants filed their operative Answer on August 26, 2015. ECF No. 72.

On February 26, 2016, LINA filed its Motion for Summary Judgment and supporting documents.  ECF Nos. 87-90.  On that same date LINA also filed, on behalf of all parties, a Stipulation of Undisputed Facts.  ECF No. 91.  Also on February 26, 2016, the WellStar Defendants filed their Motion for Summary Judgment and supporting documents.  ECF Nos. 92-95.  On April 6, 2016, Plaintiff filed her Cross Motion for Partial Summary Judgment[1] and supporting documents.  ECF Nos. 98-100.  Also on April 6, 2016, Plaintiff filed Responses to the Defendants' Motions for Summary Judgment.  ECF Nos. 101-103.  Defendants filed Replies. ECF Nos. 105-106.  Plaintiff filed Sur-Replies.  ECF Nos. 107-108.

On May 6, 2015, in response to Plaintiff's Cross Motion for Partial Summary Judgment and supporting document, LINA filed its Responses at ECF Nos. 110-112 and the WellStar Defendants filed their Responses at ECF Nos. 113-114.  Plaintiff replied thereto on May 13, 2016.  ECF Nos. 115-116.  Defendants filed Sur-Replies on May 20, 2016.  ECF Nos. 117-118.

The three Motions for Summary Judgment are now ripe for review.  The Court will address them together.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a

---

[1]  Plaintiff's Motion seeks summary judgment on Count II only.

reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).  When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party.  EEOC v. Allstate Ins., 778 F.3d 444, 448 (3d Cir. 2015).

In order to avoid summary judgment, a party must produce evidence to show the existence of every element essential to the case that it bears the burden of proving at trial; "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the nonmoving party fails to make a sufficient showing on any essential element of its case, the moving party is entitled to judgment as a matter of law.  Id.

## III.    DISCUSSION

### A.    Facts

The parties agree on the following facts.  Plaintiff's husband, Dr. Erwood, was an employee of WellStar.  ECF No. 91 ¶ 1.  Dr. Erwood began work at WellStar on April 1, 2011, as a neurosurgeon.  Id. ¶¶ 10-11.  As a participant in the Plan as a WellStar employee, Dr. Erwood was insured for $1,000,000 in life insurance benefits under policies[2] issued to the Plan by LINA.  Id. ¶¶ 2, 5, 12-13.  WellStar administered the Plan, id. ¶ 9, but LINA was responsible for paying policy benefits due.  Id. ¶ 8.

In November of 2011, Dr. Erwood began to suffer symptoms of a malignant brain tumor.  ECF No. 99 ¶ 8; ECF No. 111 ¶ 8; ECF No. 113 at 4.  He stopped working full-time at WellStar

---

[2] The Plan included one basic policy (FLX-980135) and one optional or voluntary policy (FLX-980136).  Id. ¶ 4. Dr. Erwood was insured for $500,000 in life insurance benefits under each policy.

on November 16, 2011.  ECF No. 91 ¶ 15.  He continued to work part-time and/or receive pay from WellStar until January 30, 2012.  Id.

Dr. Erwood then took Family and Medical Leave Act ("FMLA") leave.  Id. ¶ 16.  During his FMLA leave, Dr. Erwood remained a participant in the Plan.  Id. ¶ 18.

In early 2012, Plaintiff and Dr. Erwood met with WellStar human resource employees to discuss Dr. Erwood's benefits.  Id. ¶¶ 19-20.  On or about February 21, 2012, WellStar mailed Dr. Erwood a leave packet which included benefit information.  Id. ¶ 21.

While on FMLA leave, Dr. Erwood file a claim for long-term disability benefits through a WellStar program insured and administered by LINA.  Id. ¶¶ 14, 22.  His claim was approved. Id. ¶ 22.

On June 4, 2012, a WellStar Benefit Analyst emailed Plaintiff a copy of the Summary Plan Description for the Voluntary Life Insurance policy and a document showing Dr. Erwood's life insurance benefit.  Id. ¶ 23.

Dr. Erwood's life insurance policies provided a Terminal Illness Benefit ("TIB") which allows the insured to claim a portion of life insurance benefits while alive if the insured suffers from a terminal illness and is expected to die within 12 months.  Id. ¶¶ 6-7, 25-26.  In August 2012, Dr. Erwood filed a TIB claim.  Id. ¶ 25.

Premiums for Dr. Erwood's life insurance were paid through August 31, 2012.  Id. ¶ 31. No premium payments were paid thereafter.  Id.

Under the terms of the life insurance policies, an insured could apply for conversion of the policies upon expiration of coverage.  The relevant policy language provides:

> "To apply for conversion coverage, the Insured must, within 31 days after coverage under the Policy ends:
> 1. submit an application to the Insurance Company; and
> 2. pay the required premium."

4

Conversion insurance will become effective on the 31st day after the day coverage under the Policy ends provided the application is received by us and the required premium has been paid.

"Extension of Conversion Period

If an Insured is eligible for conversion insurance and is not notified of this right at least 15 days prior to the end of the 31-day conversion period, the conversion period will be extended.  The Insured will have 15 days from the date notice is given to apply for conversion insurance.  In no event will the conversion period be extended beyond 90 days.  Notice, for the purpose of this section, means written notice presented to the Insured by the Employer or mailed to the Insured's last known address as reported by the Employer."

Id. ¶ 28.

On September 4, 2012, Dr. Erwood's 36 weeks of FMLA leave expired.  Id. ¶¶ 16-17, 30.

Following the exhaustion of FMLA leave, neither LINA, the Plan nor WellStar issued a notice of termination of life insurance coverage or a formal conversion notice such that Dr. Erwood could assume payment of the requisite premiums.  ECF No. 99 ¶ 37; ECF No. 113 ¶ 37.

On or around September 5, 2012, LINA paid Dr. Erwood $250,000 on his TIB claim.  Id. ¶ 27.  In the letter with that payment, LINA included the following information:

"This payment reduces the amount of your life insurance to $750,000.00.  Please be advised that the Terminal Illness benefit (TIB) is payable only once in an Insured's lifetime.  Any premium payable will be calculated based on the full amount of the Death Benefit before any reductions were made due to the Terminal Illness Benefit paid.  Any automatic increases in Life Insurance Benefits will end when benefits are payable under this provision.

The TIB benefit reduction will be applied to any death benefit payable under the ported coverage.  If you elect to convert your coverage, your converted amount of coverage will be the amount of coverage *reduced* by the TIB benefit payment.  Premium would be due on the reduced coverage amount."

We encourage you to either contact your employee benefits department or review the insurance booklet, certificate or coverage information made available to you, to determine if you are eligible for additional benefits.

Id. ¶ 29.

On June 26, 2013, Dr. Erwood died.  Id. ¶ 32.

In September 2013, Plaintiff filed a claim for life insurance proceeds with LINA.  Id. ¶ 33.  LINA denied the claim via letter denied October 11, 2013.  Id. ¶ 34.  The letter stated that the denial was based on LINA's conclusion that, at the time of his passing, Dr. Erwood's life insurance was no longer in force because he was no longer an active employee at WellStar nor had he elected to continue his policy on an individual basis.  ECF No. 90 at 117-123.  Plaintiff appealed, but LINA upheld the benefit denial.  Id. ¶¶ 35-36.  Plaintiff exhausted her administrative remedies.  Id. ¶ 37.

### B.      Count I

Plaintiff brings Count I against LINA and the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B),[3] a provision of ERISA which permits a civil action to be brought by a participant or beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  ECF No. 34 ¶¶ 33-42.  Plaintiff alleges that the denial of her claim for life insurance benefits was improper as Dr. Erwood had, "at all relevant times, paid all necessary premiums, and satisfied the requirements to receive the disputed life insurance benefits."  Id. ¶ 34.  As to LINA specifically, Plaintiff alleges that it failed to "not accept premiums for insurance coverage for which [Dr. Erwood] was not eligible," id. ¶ 37, and that it "failed in its obligations to properly advise Dr. Erwood regarding his rights under the Plan when it misrepresented in its

---

[3]  The parties dispute the applicable standard of review for the denial of benefits.  The United States Supreme Court has held "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  The Defendants claim that LINA had discretionary authority so as to trigger an abuse of discretion standard.  ECF No. 89 at 10-12; ECF No. 93 at 9 n.3.  Plaintiff claims the policies did not grant such discretionary authority.  ECF No. 103 at 20-22.  In the interest of judicial economy and because the impact of the distinction is not great in this case, the Court declines to decide this question and instead will utilize the *de novo* standard and review Plaintiff's claim as any other contract claim by looking to the terms of the plan.  See Firestone Tire, 489 U.S. at 112-13.

September 5, 2012 letter that $750,000 in life insurance proceeds remained in place under the Life Plan, after the date coverage allegedly lapsed." Id. ¶ 38.

A review of the filings concerning the instant Motions reveals that Plaintiff has now abandoned her allegation in the Complaint that LINA improperly accepted premiums. No premiums were paid after the FMLA leave expired. ECF No. 91 ¶¶ 30, 31.

LINA and the Plan assert that they are entitled to summary judgment on this Count because the evidence shows that Dr. Erwood's life insurance policies terminated, at the latest, in October, 2012. ECF No. 89 at 13; ECF No. 93 at 9-10. Therefore, the argument follows, Dr. Erwood was not covered by the policies at the time of his death in June, 2013, and benefits were properly denied. ECF No. 89 at 14; ECF No. 93 at 9-10.

In response, Plaintiff offers a brief argument asserting that the policy language "is both ambiguous and confusing," and arguing that "a participant on disability could assume that coverage for him continues until 'the date the Employee is no longer disabled.'" ECF No. 103 at 24. The language she refers to is as follows:

> **Continuation for Disability**
> If an employee becomes Disabled, the Life Insurance Benefits shown in the Schedule of Benefits will be continued, provided premiums are paid, until the earlier of the following dates:
> 1. The date the Employee is no longer disabled.
> 2. The date following the Maximum Benefit Period shown in the Schedule of Benefits.
> 3. The date coinciding with the end of the last period for which premiums are paid.
> 4. The date the policy is terminated by the Insurance Company.

ECF No. 99 ¶ 22.

Plaintiff argues that from this language and LINA's statement that Dr. Erwood had $750,000 of remaining life insurance, "Dr. Erwood could easily have concluded that his life

insurance continued throughout the period of his disability, under which he remained until his death."  ECF No. 103 at 24.

The policy language upon which Plaintiff relies is conditioned upon payment of premiums.  It is undisputed that premium payments were paid only through August, 2012, and thus ceased well before Dr. Erwood's death in June, 2013.  Accordingly, regardless of the information that was provided or not provided to Dr. Erwood, because the payment of premiums on the life insurance policies had stopped and the grace period had expired, Dr. Erwood had no coverage under these policies at the time of his death.

Because Plaintiff has failed to produce evidence that benefits are due to her under the terms of the Plan, LINA and the Plan are entitled to judgment as a matter of law on this claim.

### C.     Count II

In Count II of the operative Complaint, Plaintiff brings a claim against all Defendants pursuant to 29 U.S.C. § 1132(a)(3), a provision of ERISA which, in pertinent part, permits a beneficiary to obtain equitable relief for violations of ERISA or the terms of an ERISA plan. Plaintiff's claim is principally based on her allegation that Defendants breached their fiduciary duties to Dr. Erwood and his beneficiaries.  ECF No. 34 ¶¶ 48-49.

To establish the relevant type of breach of fiduciary duty, "a plaintiff must demonstrate that: (1) the defendant was 'acting in a fiduciary capacity;' (2) the defendant made 'affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries;' (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure."  Unisys Corp. Retiree Med. Benefits Erisa Litig. v. Unisys Corp., 579 F.3d 220, 228 (3d Cir. 2009).

8

### 1.    LINA

In her Complaint, Plaintiff alleges, "[t]hrough the act of paying Dr. Erwood $250,000 in proceeds under the Life Plan's Terminal Illness Provision after the date the policy lapsed, [LINA] misrepresented to Plaintiff that the coverage remained in place after that date, thereby breaching the fiduciary duties it owed to Dr. Erwood and his beneficiaries."  Id. ¶ 49.  Plaintiff further alleges, "[b]y informing Dr. Erwood that he remained entitled to $750,000 in benefits after the policy lapsed, [LINA] misrepresented to Plaintiff that the coverage remained in place beyond the date it lapsed, thereby breaching the fiduciary duties it owed to Dr. Erwood and his beneficiaries."  Id. ¶ 50.

In her Brief concerning the instant Motions for Summary Judgment, Plaintiff defines the breaches of LINA's fiduciary duties in a number of ways, i.e.,: (1) "LINA had a duty to investigate the status of Dr. Erwood's life insurance before assuring him that $750,000 of coverage remained," ECF No. 103 at 30; (2) "LINA breached its fiduciary duty by misrepresenting the amount of insurance available without investigating whether Dr. Erwood had converted his policy," id. at 31; (3) "LINA failed to inform Dr. Erwood that he needed to take action to ensure that the remaining $750,000 worth of insurance remained in place," id. at 32; and (4) "LINA represented that those benefits were still in place without investigating whether that statement was true, nor advising Dr. Erwood that he need to take specific action to avail himself of that benefit," id. at 33.  In any event, Plaintiff's claim against LINA under Count II for breach a fiduciary duty is based on an alleged misrepresentation via the letter accompanying the TIB payment.[4]

---

[4] The Court notes that Plaintiff claims that LINA is equitably estopped from denying a breach of fiduciary duty.  "To succeed under this theory of relief, an ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances."  Pell v. E. I. DuPont De Nemours & Co., 539 F.3d 292, 300 (3d Cir. 2008) (citing Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226,

LINA asserts that it made no misrepresentations in the letter.  ECF No. 89 at 16-18.  Had Dr. Erwood died on September 5, 2012, LINA explains, he would have been entitled to recover the $750,000 set forth in the letter.  Id. at 18.  At that time, given the agreed-upon date of September 4, 2012, as the end of Dr. Erwood's FMLA leave, he was within the grace period in which he could convert his coverage.  Id.

As to whether LINA failed to adequately inform Dr. Erwood as to his benefits (specifically, the imminent need to convert his policies), LINA disputes that, in its role as claims administrator, it could have any such duty to inform.  Id. at 21.  However, assuming that it could have, LINA continues, it did not.  Id. at 21-25.  LINA cites to Davis v. AK Steel Corp., 670 F. Supp. 2d 413, 427 (W.D. Pa. 2009), in which this Court set forth "three pertinent factors to consider when determining whether a defendant has a fiduciary duty to provide information: (1) whether the plaintiff inquires about benefits; (2) whether under the circumstances the defendant has a reason to know that the plaintiff might be eligible for certain benefits that plaintiff does not inquire about; and (3), 'equally important' whether the plaintiff has already been given sufficient information from which the plaintiff could determine that he might be eligible for benefits …."  (citation omitted).  ECF No. 89 at 22.  Consideration of these factors, LINA argues, reveals that LINA had no duty because, inter alia, Dr. Erwood had received sufficient information from which he could determine his conversion rights and requirements.  Id. at 24-25.

It is clear to this Court that even assuming arguendo that LINA's September 5, 2012, letter contained no patent misrepresentations, the existence of latent misrepresentations/material

---

235 (3d Cir. 1994)).  LINA argues that Plaintiff does not and cannot prove detrimental reliance, citing the lack of evidence that Dr. Erwood relied on the September 5, 2012, letter in any way.  ECF No. 89 at 19.  Plaintiff argues that "detrimental reliance is readily shown.  LINA failed to inform Dr. Erwood that he needed to take action to ensure that the remaining $750,000 worth of insurance remained in place.  … Dr. Erwood died, taking no further action, believing that he had more coverage than he did."  ECF No. 103 at 31-32.  Although Plaintiff's assertions are unsupported by citation to record evidence concerning Dr. Erwood's belief, the source thereof or any actions taken or not taken in reliance thereupon, given the overall nature of her claim, there appears to be a question of fact on this point.  Accordingly, Plaintiff cannot, at this time, assert equitable estoppel against LINA.

omissions therein remains an open question.  It is equally clear that whether Dr. Erwood received sufficient information from which he could determine his conversion rights and requirements is the central and as-yet-unanswered question in this litigation.  After review of the relevant briefs and exhibits, as well as applicable statutory and case law, the Court finds that neither party has established entitlement to judgment as a matter of law as to these questions.  Thus, they should be decided at trial.

### 2.   The WellStar Defendants

In her Complaint, Plaintiff alleges that the WellStar Defendants mishandled the administration of the conversion process for Dr. Erwood, thus breaching their fiduciary duty to him and his beneficiaries.  In her Brief concerning the instant Motions for Summary Judgment, Plaintiff's defines that duty as one "to provide a conversion notice under the Plan."  ECF No. 103 at 28.

It is undisputed that WellStar provided the following to Plaintiff and/or Dr. Erwood: (1) a February 21, 2012, letter and leave packet which included information that a conversion life insurance policy may be available for employees who request to continue coverage at the end of leave and an instruction to contact the Benefits office for details, ECF No. 94 ¶¶ 17-20; ECF No. 101 ¶¶ 17-20; and (2) a June 4, 2012, e-mail containing the voluntary life insurance Summary Plan Description ("SPD") containing a section concerning "Conversion Privilege for Life Insurance," ECF No. 94 ¶ 26; ECF No. 101 ¶ 26; ECF No. 93-14 at 19-20.

However, it is also undisputed that WellStar did not provide the following to Plaintiff and/or Dr. Erwood: (1) information about conversion rights at any point after Dr. Erwood's termination on September 4, 2012; (2) materials necessary to apply for conversion, ECF No. 99 ¶

38; ECF No. 113 ¶ 38; or (3) LINA's "conversion brochure" which must be completed, in part, by the employer, ECF No. 99 ¶¶ 109-111; ECF No. 113 ¶¶ 109-111; ECF No. 100-10 at 12.

Although the parties agree on the above-stated facts, they disagree as to the significance thereof.  Plaintiff alleges that WellStar's actions did not amount to the notice of conversion rights as required by the Plan.  WellStar alleges that the Plan does not require notice above what it provided to the Erwoods.  After review of the relevant briefs and exhibits, as well as applicable statutory and case law, the Court finds that neither party has established entitlement to judgment as a matter of law as to this question.  It thus should be decided at trial.

## IV.    CONCLUSION

For the foregoing reasons, LINA's Motion for Summary Judgment, ECF No. 87, is granted as to Count I and denied as to Count II.  The WellStar Defendants' Motion for Summary Judgment, ECF No. 92, is granted as to Count I and denied as to Count II.  Plaintiff's Cross Motion for Partial Summary Judgment, ECF No. 98, is denied.


BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


cc:    All counsel of record via CM-ECF